UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

REVEL ZAIN                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:10-CV-296-S

MICHAEL ZAHRADNICEK et al.                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court are cross motions for summary judgment.  For the reasons set forth

below, the Court will grant Defendants' motion and deny Plaintiff's motion.

## I. FACTS

Plaintiff brought this *pro se* civil-rights action concerning events at his house on April

24, 2009, against Louisville Metro Police Officers Michael Zahradnicek, Thomas D. Schardein,

R. Schroeder, Darice Wiley, and M. Shugart and against the Louisville Metro City Government.[1]

After initial review, the Court allowed the following claims to go forward against Defendants

Zahradnicek, Schardein, Schroeder, Wiley, and Shugart:  Plaintiff's Fourth Amendment claim

relating to Defendants' failure to leave his property after their "knock and talk" visit to his

residence and Plaintiff's Fourth Amendment excessive-force claim against Defendants for firing

a taser at him prior to his arrest.  The Court dismissed all other claims.

The allegations in Plaintiff's verified complaint were as follows.  According to Plaintiff,

on the evening of April 24, 2009, he was at his home with his minor son, J.Z.  He looked out his

window and saw what appeared to be police detectives in his front yard.  He opened his door to

investigate further.  When he did so, he encountered Defendants Shugart and Schardein.

---

[1]His complaint listed his minor son, J.Z., as a Plaintiff.  However, because Plaintiff,
acting *pro se*, cannot bring claims on his minor's sons behalf, J.Z.'s claims were dismissed.

Plaintiff asked them what was going on.  Defendant Shugart stated that they were wondering the same thing.  Plaintiff told Defendants he did not know what they were talking about and that there was no trouble at his house.  Plaintiff states that Defendant Shugart stated that he would like to talk to Plaintiff.  Plaintiff asked Defendant Shugart if he was under arrest.  Defendant Shugart stated that Plaintiff was not under arrest and that they just wanted to talk to him. Plaintiff responded that if he was not under arrest for anything, he had nothing to talk about. Plaintiff states that he then went back inside of his house.

When Plaintiff looked outside his window a bit later, he saw that the Defendant officers were still on his property – standing in his front yard and next to his truck in the driveway. Plaintiff again opened the door and was met there by Defendant Schardein.  Plaintiff states that he repeatedly asked Defendants to leave, but they refused to do so.  By this time, Plaintiff claims that the Defendant officers were pointing guns at him and his son.  He again asked if he was under arrest, and the Defendant officers again told him that was not.  He states that Defendant Zahradnicek then approached from the side of Plaintiff's garage and shot him with a taser gun causing him to fall to the ground.  Plaintiff states that when he recovered, he called 911, a family friend, and his attorney.  Plaintiff states that he was so fearful for his and his son's safety that he could not leave the home.

The tasing allegedly occurred at 20:41:17 on April 24th.[2]  Plaintiff states that at this time he was not under arrest.  Defendants later obtained a warrant for his arrest.  Plaintiff was

_____

[2]The time 20:41 would be 8:41 p.m.  However, later in the complaint Plaintiff states that he was tased at 7:41 p.m.  It appears that given the timeline Plaintiff alleges and the fact that his interrogatories to Defendants refer to 20:41, *i.e.* 8:41 p.m. and not 7:41 p.m., 8:41 p.m. is the correct time.

removed from his home at approximately 12:10 a.m. on April 25th.  Approximately twenty

minutes later, Defendants conducted a search of Plaintiff's home pursuant to a search warrant.

     Defendants' version of the events as set forth in their motion for summary judgment and

in their response to Plaintiff's motion differs in some particulars.  Defendants do not dispute that

they went to Plaintiff's residence on that evening, or that they did not leave after being told to do

so by Plaintiff, but according to Defendants by the time Plaintiff asked them to leave they

believed they had probable cause and exigent circumstances to remain on his property based on

reports that Plaintiff had fired a gun and observations of him going into the home with a child.

     According to Defendants' response to Plaintiff's summary-judgment motion, Defendant

Zahradnicek was the first officer to respond after the 911 calls from Plaintiff's neighbors and he

observed Plaintiff outside with a gun.  Plaintiff then went inside his home.  According to the

Louisville Metro Police Department Special/Auxiliary Team After Action Report, the Hostage

Negotiation Team (HNT) was notified at 22:21, arrived at 23:00, and cleared the area at 01:30.

That incident narrative is as follows:

> On 4/24/2009, at about 1900 hours, the suspect was the
> perpetrator of a street robbery at a shopping center on Hurstbourne
> Parkway. The victim of that robbery followed the suspect as he left
> the scene in his vehicle.  The suspect was followed to his residence
> at 12014 Rock Spring Ct. where he was confronted by the victim
> of the robbery.  The suspect entered his residence and came back
> outside with a firearm which he shot in the air several times.  8th
> Division Officers were called at about 1925 hours.  They arrived
> on the scene and asked the suspect to leave the house.  He refused
> to do so.  There were reports of children in the home during the
> shooting and subsequent standoff.  Reports indicate that the
> suspect was using children as shields.
> SWAT/HMNT arrived at around 2300 hours, after being
> notified at about 2221 hours.  The HNT truck was unavailable for
> service.  HNT Negotiators used a police vehicle as an operations
> center, and used what equipment that was on-hand and operable to

3

make a recording of their interaction with the suspect.

At 2350 hours, Negotiators attempted to make contact with the suspect by phone, but were unsuccessful.  At about 2356 hours, Metrosafe notified HNT that the suspect had dialed 911 and was on the line with them.  Metrosafe was asked to transfer that call to negotiators.  The call was transferred to HNT at about 0001 hours. Negotiators spoke briefly with the suspect, whose concern was that someone was coming to pick up his son so that the son would be taken care of after the surrender to police.  The suspect did come out without much prompting by Negotiators, and was taken into custody without incident at about 0010 hours.

According to attachments to Defendants' motion for summary judgment, the robbery victim, Jackie Wilson, and Plaintiff had had a sexual relationship approximately two years earlier for two to three months and on April 24, 2009, the day of the alleged robbery, Plaintiff had called her over 120 times and left a note on her car at work.  The complaint for the arrest warrant stated that Plaintiff approached Ms. Wilson and her aunt at a department store, where Plaintiff grabbed her purse telling her that now she would have to talk to him.  Ms. Wilson and her aunt then followed Plaintiff back to his house in an effort to get her purse back.  During the ensuing confrontation, Plaintiff fired once at the car and twice into the air.[3]

Attached to Defendants' motion for summary judgment is a copy of the arrest warrant, which was signed by the judge at 10:56 pm on April 24, 2009.  The arrest warrant listed the following charges:  harassing communications; first-degree robbery; first-degree stalking; two counts of first-degree wanton endangerment; and endangering the welfare of a minor.

Another attachment shows that on December 20, 2010, Plaintiff entered a plea of guilty

---

[3]Among Plaintiff's arguments in his motion for summary judgment is an argument that the arrest and search warrants are "questionably fraudulent."  He also asserts that investigation would have shown that Plaintiff was never on Hurstbourne Parkway, never involved in a robbery, and never fired a weapon.  These issues are not relevant to the issues before the Court.

to possession of a firearm by a convicted felon, two counts of wanton endangerment in the first degree, and harassing communications.

## II. <u>ANALYSIS</u>

### *Summary-judgment standard*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is

5

"entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted).

**A.      Failure to leave after knock-and-talk**

In their summary-judgment motion, Defendants first argue that Plaintiff's claim that his Fourth Amendment rights were violated by the "knock and talk" is barred by collateral estoppel because Plaintiff raised that claim in a motion to suppress before the state criminal court but then entered a guilty plea before the motion was decided.  Attached to the Defendants' motion is a copy of Plaintiff's motion to suppress filed in state court on October 22, 2009.  That motion moved to suppress "any and all fruits of any search or other governmental intrusion to his home on April 24-25, 2009."  Among other things, that motion argued that the "search or other governmental intrusion was not preceded by the required prior establishment of probable cause or reasonable articulable suspicion."

In support, Defendants cite to *Donovan v. Thames*, 105 F.3d 291 (6th Cir. 1997). However, in that case, unlike the instant case, the Kentucky state trial court actually ruled on the motion to suppress.  The *Donovan* court discussed *Allen v. McCurry*, 449 U.S. 90 (1980), as "establish[ing] that issues *actually* litigated in a state-court proceeding are entitled to preclusive effect in a subsequent federal § 1983 suit to the extent provided by the law of preclusion in the state where the judgment was rendered." *Donovan*, 105 F.3d at 294 (emphasis added.)

Defendants also rely on *Lomaz v. Hennosy*, 151 F.3d 493 (6th Cir. 1998).  In that case, the Sixth Circuit noted in a footnote that any claims by the plaintiff that the affidavit and warrant were facially invalid, overbroad, and not based on probable cause "would likely be precluded"

6

because the state trial court had denied the plaintiff's suppression motion. *Lomaz*, 151 F.3d at 499 n.8. The *Lomaz* Court further noted that collateral estoppel can bar relitigation of the issue of probable cause even where the criminal defendant was acquitted, although other courts have held that a full and fair opportunity to litigate an issue as required for the application of collateral estoppel includes the opportunity to appeal an adverse ruling.

Defendants, in their reply brief, also assert that, in determining collateral estoppel's applicability, a federal court looks to that state's law, and they rely on an unpublished decision of a Kentucky appellate court, *England v. Laird*, No. 2007-CA-772-MR, 2008 WL 399758 (Ky. App. Feb. 15, 2008), which considered the issue of collateral estoppel after a criminal jury trial in a subsequent wrongful-death action. That court identified the requirements for the offensive use of collateral estoppel as "(1) a final decision on the merits; (2) identity of issues; (3) issues actually litigated and determined; (4) a necessary issue; (5) a prior losing litigant; and (6) a full and fair opportunity to litigate." *England*, 2008 WL 399758, at *2. Thus, all of the cases relied on by Defendants in this regard involved a prior actual determination on the merits of the issue; none of these cases concerned the filing of a motion to suppress followed by a guilty plea before a determination was made on the suppression motion. The Court will not grant Defendants' summary judgment on this basis.

Defendants next argue that no constitutional violation occurred regarding the "knock and talk" when they remained on Plaintiff's property after he asked them to leave. Defendants argue that they believed exigent circumstances existed; however, rather than attempting entry into the home to effect the arrest, SWAT and HNT were called to the scene. Thus, they had reason to remain on the scene after they were asked to leave.

7

"A law-enforcement officer may enter a home's curtilage without a warrant if he has a legitimate law-enforcement objective, and the intrusion is limited." *Turk v. Comerford*, 488 F. App'x 933, 947 (6th Cir. 2012). "Unquestionably, one such permissible intrusion is a 'knock and talk,' an investigative technique where an officer knocks on the door of a house to engage the person inside in conversation." *Id.* (quoting *Hardesty v. Hamburg Twp.*, 461 F.3d 646, 653 (6th Cir. 2006)).

An officer may initiate a knock and talk without any objective level of suspicion. *Pritchard v. Hamilton Twp. Bd. of Trs*, 424 F. App'x 492, 499 (6th Cir. 2011). Exigent circumstances may arise during the course of the knock and talk "[w]hen an officer observes facts giving rise to exigent circumstances in the course of such a consensual encounter." *Ewolski v. City of Brunswick*, 287 F.3d 492, 505 (6th Cir. 2002). "The relevant inquiry is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *Id.* at 501.

According to Defendants' responses to interrogatories, Defendant Wiley came to Plaintiff's house after receiving a call from Defendant Shugart "regarding a possible SWAT call out on a barricaded robbery suspect." Defendants Schardein and Shugart "responded to that location upon learning of shots fired on private property following an incident that occurred in public view." Defendant Schroeder stated that he was not dispatched to that location but that he was "contacted by phone by the sergeants on duty to respond to a hostage stand-off." Defendant Zahradnicek stated, "I was dispatched on a fight between one black male and two black females in the area of Rock Spring Drive and Rock Spring Court with updates from the dispatcher as I was en route."

8

According to the certified copy of the MetroSafe Event Summary which was attached to Defendants' motion for summary judgment, at 19:33:30 the subject ran back into the house; at 19:36:21, "neighbor adv subj fired 4 shots from blk semi auto handgun;" at 19:45:38 subject was "keeping juv in front of him"; at 19:45:57 subject went back into house; and at 19:46:19 "confirmed robbery."  Thus, it appears from the record that very soon after officers arrived they could reasonably have believed that Plaintiff had a gun, had fired a gun, a robbery had been committed, and he was holding his son in front of him as a shield.  Therefore, the Court finds that Defendants are entitled to summary judgment on this issue as they have established exigent circumstances such that extending the knock and talk was constitutionally permissible.

**B.**     **Tasing**

*Tasing claim as to Defendants Wiley, Schardein, Shugart, and Schroeder*

Defendants assert that the claim relating to deployment of the taser must be dismissed as to Defendants Wiley, Schardein, Shugart, and Schroeder because they did not deploy their tasers. According to Defendants' response to Plaintiff's interrogatories, only Defendant Zahradnicek deployed a taser.  Plaintiff does not offer any evidence that any Defendant other than Defendant Zahradnicek used his taser.

"[A]n officer's mere participation in events that include the use of excessive force is not itself sufficient grounds to impose liability."  *Landis v. Galarneau*, 483 F. App'x 209, 211 (6th Cir. 2012).  Therefore, all of the Defendants other than Defendant Zahradnicek will be dismissed on this claim.  *See Wilson v. Morgan*, 477 F.3d 326, 337 (6th Cir. 2007) (holding judgment as a matter of law properly granted as to the five defendants for whom the plaintiff presented no evidence connecting them to his arrest).

9

*Whether tasing occurred*

Defendants argue that the claim against Defendant Zahradnicek's deployment of his taser must be dismissed because the taser did not strike Plaintiff.[4]  They assert that the firing and miss of the taser did not constitute a seizure.  According to all of Defendants' responses to Plaintiff's interrogatories, when Defendant Zahradnicek deployed his taser "a miss of the deployment occurred."  These responses conflict with Plaintiff's version of events.

In his deposition testimony, Plaintiff stated that while he was talking to the officer in front of him he saw him point a gun or a taser, he did not know which, at him, but the officer told him that he was not under arrest and had no warrant for his arrest at which point Plaintiff "turned, as far as to go back in my home, that's when he shot me with the taser."  According to Plaintiff, the taser made contact with him in his chest, knocking him back in his house, along with his son.  Plaintiff stated that the taser knocked him to the floor injuring his shoulder and right wrist.  When asked if the taser caused any physical reaction, Plaintiff stated:  "Jar me; shock; and the burning pain that was in my chest."  In his deposition, Plaintiff was asked, "Do you have any idea why the police were unable to subdue you at that point then if it knocked you into the house?"  He answered:

> A.    Subdue me?
> Q.    Why they were unable to take control of you at that point.
> A.    Why would they be trying to take control of me?  My
>        understanding was when they came there they just wanted
>        to talk to me, and I felt at that point that they had just

---

[4]"A taser is an electric stun-gun."  *Thomas v. Plummer*, 489 F. App'x 116, 125 (6th Cir. 2012).  "Most tasers have two modes:  dart mode and drive-stun mode. " *Id.* at 125 n.10. "[D]rive-stun mode involves placing the taser against the suspect's skin[.]" *Id.*  "In dart mode, it uses metal-tipped 'probes' to deliver an electric shock, causing temporary paralysis and intense pain." *Id.* at 125 (quoting *Bryan v. MacPherson*, 630 F.3d 805, 824 (9th Cir. 2010)).

10

> assaulted me, just violated me, you know, by shooting me
> with a taser.  If at any point the police would have asked
> me or told me that I was under arrest, at any point that they
> would have told me they had an arrest warrant, I would
> have complied, and I would have, you know, did what they
> asked.  But they never told me I was under arrest; never
> showed me no warrant or anything.

Plaintiff also testified that after he was shot with the taser he "immediately called 911 and told them that I had been shot by the police and what had happened."  When asked whether he was calling 911 for the police or for EMS, Plaintiff testified,

> I was calling for the police basically because I think that actually
> what was happening was illegal as far as the police actually
> shooting me because, you know No. 1, they told me that I wasn't
> under arrest; No. 2, they didn't have no arrest warrant for me.  And
> they said they only wanted to talk, so I basically felt I was being
> violated, so I wanted to call 911 to let them know what was
> actually happening at my home.

The Court has reviewed the audio recording of the 911 calls provided by Defendants in support of their summary-judgment motion.  In the calls made by Plaintiff, not once did he mention having been tased.[5]

The Louisville Metro Police Department Administrative Incident Report, attached to Defendants' motion for summary judgment, states in the "Description of the Incident" portion:

> Officers were dispatched in a trouble run to the area.  Upon arrival
> officers learned that one of the subjects involved in the fight had
> retrieved a firearm and fired several rounds into the air.  Upon
> seeing the first responding officer subject fled into his residence
> (with 5 year old child).  It was determined that the subject had
> been in a confrontation with the victim and had stolen her purse,

---

[5]At his deposition, Plaintiff denied remembering seeing a robot outside of his house or seeing additional police arrive on the scene.  Plaintiff also stated in his deposition that he did not see a SWAT team.  However, review of the 911 calls reveals that Plaintiff stated there was robot in front of his house and a SWAT team around his house.

> which led to a larger confrontation.  Subject was subsequently
> identified as being a convicted felon with a violent history.
>
> At one point the subject partially exited the premises and was in a
> conversation with on scene command.  When the subject began to
> return to the house with the child, Officer Zahradnicek deployed
> his ECW (Taser), however the probes did not make contact with
> the subject.

"The Fourth Amendment protects against 'unreasonable seizures,' not unreasonable or even outrageous conduct in general."  *Galas v. McKee*, 801 F.2d 200, 202 (6th Cir. 1986).  Thus, the threshold question which the Court must address has two parts:  "whether there was a seizure" and whether "even assuming arguendo" there was a seizure that seizure was unreasonable.  *Id.*  "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons.  Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."  *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 8 (1968).

Although research did not reveal any cases in which a deployment of a taser missed, there is support in case law for Defendants' proposition that a missed deployment does not constitute a seizure.  *See Bennett v. City of Eastpointe*, 410 F.3d 810, 833 (6th Cir. 2005) (where suspect flees instead of submitting to show of authority there is no seizure); *Cameron v. City of Pontiac, Mich.*, 813 F.2d 782 (6th Cir. 1987) (same).  However, although the Court finds it suspicious that all of the Defendants state that the deployment was unsuccessful and that Plaintiff did not in fact mention having been tased on the 911 calls, viewing the evidence in the light most favorable to Plaintiff, as this Court must on a motion for summary judgment, the Court must accept Plaintiff's version that he was in fact tased.  Therefore, the Court must turn to the question of whether tasing Plaintiff was a constitutional violation.

12

*Whether tasing was reasonable*

Defendants argue that firing the taser did not violate the Constitution since the use of that force was or would have been reasonable from the perspective of the reasonable officer at the scene. They assert that at the time the taser was deployed, Defendants had probable cause to charge Plaintiff with a felony based on information that Plaintiff was accused of being involved in an armed robbery, had possession of a firearm, had discharged a firearm, and was attempting to go back inside with his five-year old son.

"All claims that police officers used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its 'objective reasonableness' standard." *Bennett v. Krakowski*, 671 F.3d 553, 561 (6th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). To determine whether an officer's use of force was objectively reasonable, the Court must consider the totality of the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Defendants assert that at the time Defendant Zahradnicek tased Plaintiff he believed he had probable cause to arrest him on felony charges.        Defendants' answers to the interrogatories make no mention of having told Plaintiff that he was under arrest, and Defendants do not offer their own affidavits on this issue. One of Plaintiff's interrogatories asked, "Did Plaintiff ask you to leave his property and insisted that you leave his property that he had nothing to talk about?" Defendant Wiley stated in his interrogatory answer to the question: "Yes, but he was told that he was facing criminal charges and we could not leave until it was cleared up."

According to the Sixth Ciruit, "[c]ases from this circuit and others . . ., adhere to this line: If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth

13

Amendment by using a taser to subdue him." *Hagans v. Franklin Cnty. Sheriffs*, 695 F.3d 505, 509 (6th Cir. 2012).  Thus, if the evidence showed that Plaintiff had been told he was under arrest and he had failed to comply, the purported tasing would not have violated the constitution. The evidence before the Court does not show that Plaintiff was told he was under arrest.  The Court will therefore turn to the question of qualified immunity, specifically its requirement that Plaintiff's right not to be tased in this situation was clearly established in April 2009.

*Qualified immunity regarding tasing*

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2080 (2011).  Both prongs must be present before qualified immunity is swept away.  *Id.*  Once a defendant has pleaded the affirmative defense of qualified immunity, as Defendants have here, the burden shifts to Plaintiff to show that the official violated a right so clearly established "that every reasonable official would have understood that what he [was] doing violate[d] that right." *Id.* at 2083.  Plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005).  If the plaintiff fails to carry this burden as to either element of the analysis, qualified immunity applies and the state official is immune to the plaintiff's suit.  *Cockrell v. Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

The Sixth Circuit in *Hagans* held that in qualified-immunity cases when deciding whether a right has been clearly established it is important to define the constitutional right at the

14

appropriate level of generality, that is "a reasonably particularized" level of generality.  *Hagans*, 695 F.3d at 505.  Here, the Court finds that the right should be defined as follows:  whether in 2009 a person whom police officers have reason to believe had committed an armed robbery, then had an altercation including firing shots in front of his home, and was retreating into his home with his five-year old son had a clearly established right not to be tased in the doorway of his home although officers had not told him he was under arrest.

In *Cockrell*, the Sixth Circuit considered "whether a misdemeanant, fleeing from the scene of a non-violent misdemeanor, but offering no other resistance and disobeying no official command, had a clearly established right not to be tased on July 3, 2008."  *Cockrell*, 469 F. App'x at 495.  The Court held that, even if the officer did use excessive force, he was entitled to qualified immunity.  The Court discussed the two groups of qualified immunity cases involving taser use:  (1) where a plaintiff is tased while actively resisting arrest by struggling with, threatening, or disobeying officers; and (2) where a plaintiff is tased who has done nothing to resist arrest or is already detained.  *Id.* at 495-96.  The Sixth Circuit determined that Cockrell's case did not fit cleanly in either group as Cockrell did not use violence, make threats, or disobey a command.  "Yet flight, non-violent though it may be, is still a form of resistance."  *Id.* at 496. In *Cockrell*, even though the Sixth Circuit assumed that the officer said nothing to the plaintiff before tasing him, *see id.* at 496 n.7, qualified immunity was applicable.  *See id.* at 497 ("[I]n all cases where a plaintiff fled from police, the court held that qualified immunity was appropriate[.]").  Moreover, the *Cockrell* Court stated that "[t]hese broad principles do not establish the contours of the right [the defendant] allegedly violated so clearly that every reasonable officer would know his actions were unconstitutional, even today.  It certainly did not

15

do so in July 2008." *Id.*

Here, Plaintiff offers no proof either in his summary-judgment motion or in his response to Defendants' summary-judgment motion that Defendant Zahradnicek violated a right so clearly established "that every reasonable official would have understood that what he [was] doing violate[d] that right." *al-Kidd*, 131 S.Ct. at 2083.  The *Cockrell* Court found that it was not clear whether tasing a suspect who fled the scene of a nonviolent misdemeanor constituted excessive force in July 2008.  *Cockrell*, 468 F. App'x at 498.  This Court finds that it is not clear that tasing a presumably armed suspect of felony crimes who is retreating into his home with his son, whom officers believe he is using as a shield, constituted excessive force in April 2009.  The Court finds that Defendant Zahradnicek is qualifiedly immune on this claim.

### III. <u>CONCLUSION</u>

Plaintiff has failed to show that he is entitled to summary judgment in his favor. Therefore, his summary-judgment motion (DN 78) is **DENIED**.

Plaintiff has failed to refute Defendants' arguments in their summary-judgment motion and also has failed to demonstrate the existence of genuine issues of material fact.  Therefore, Defendants are entitled to judgment as a matter of law.  The motion for summary judgment (DN 79) is **GRANTED**.  This action will be **DISMISSED** by separate Order.

Date:  March 19, 2013

cc:      Plaintiff, *pro se*
         Counsel of record
4411.009

**Charles R. Simpson III, Senior Judge**
**United States District Court**

16